# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ZANNIE NEAL** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-8714** |
| **N. BURL CAIN, WARDEN LOUISIANA STATE PENITENTIARY** | **SECTION "A"(4)** |

## SUPERSEDING REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Procedural History of the Captioned Case

On December 17, 2008, the undersigned issued a Report and Recommendation in which it was recommended that the federal habeas corpus petition filed by the petitioner, Zannie Neal, be dismissed for the following reasons:[2] (1) Neal's claims of an erroneous jury charge and

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. 22.

discriminatory grand jury selection process were procedurally barred from federal habeas review; (2) Neal's claims of insufficient evidence and ineffective assistance of counsel were without merit under the applicable AEDPA standard of review. In addition to his objections to this Report, Neal moved this Court to hold his petition in abeyance to allow him to pursue other collateral review under the Louisiana Supreme Court's opinion in *State v. Cordero*, 993 So.2d 203 (La. 2008).[3] On January 9, 2009, the District Judge granted Neal's request for the stay.[4]

On October 11, 2011, Neal moved to have his case re-opened after receiving no relief on his claims from the state courts in the *Cordero* review, and the District Judge granted that request.[5] The matter was referred to the undersigned Magistrate Judge for issuance of a report and recommendation.[6]

On December 21, 2011, by order of the Court, the State provided four supplemental volumes of the state court records accumulated since the presentation of the record to the Court on March 22, 2007.[7] This Superseding Report and Recommendation is issued to address Neal's habeas corpus petition under current law.

---

[3]Rec. Docs. 23, 24. The *Cordero* court addressed the alleged procedural improprieties and summary dismissals without judicial review of *pro se* post-conviction writ applications filed in the Louisiana Fifth Circuit Court of Appeal between February 8, 1994, and May 21, 2007.

[4]Rec. Doc. 25.

[5]Rec. Docs. 26, 27; *State ex rel. Neal v. State*, 69 So.3d 1137 (La. 2011); St. Rec. Suppl. Vol. 4 of 4, La. S. Ct. Order, 2010-KH-1862, 9/16/11; St. Rec. Suppl. Vol. 1 of 4, 5th Cir. Order, 08-WR-926, 10/18/08.

[6]Neal did not amend his complaint after the case was re-opened. Rec. Docs. 26, 28, 29, 30.

[7]Rec. Doc. 31.

## II.  Factual and Background

The petitioner, Zannie Neal ("Neal"), is incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[8]  On May 21, 1998, Neal and two co-defendants, Jarrell Neal and Arthur Darby, were indicted by a Grand Jury in Jefferson Parish for the first degree murders of Greg Vickers and Fergus Robertson.[9]

The record reflects that, Robertson and Vickers were shot to death between 11:00 p.m. and 12:00 p.m. on March 31, 1998.[10]  They were found in the home that Robertson shared with Claudette Hurst, her three minor children, and her brother, Carl Duncan.  About six weeks before the murder, Jarrell Neal went to Hurst's house to see her stepfather, Frank McQueen, who was living with Hurst at the time.  Prior to the shooting, Zannie and Jarrell Neal had called the house looking for McQueen, who owed them money.  By the time of the shooting, McQueen was no longer living in the house.

Between 9:30 p.m. and 10:00 p.m. on the night of the shooting, Zannie and Jarrell Neal were at the home of their uncle, Arthur Darby.  They asked Darby to be their driver so that they could collect some money owed to them.  The Neals instructed Darby to bring his .38 caliber pistol.  The three men drove to Hurst's home in the Neals' car.  Zannie and Jarrell Neal exited the car, leaving Darby in the car to "chill and take the wheel."  Zannie Neal was armed with a 9mm handgun and Jarrell Neal was armed with a rifle, later determined to be an AK-47 semi-automatic weapon.

---

[8]Rec. Docs. 3, 32.

[9]St. Rec. Vol. 1 of 8, Indictment, 5/21/98.  The indictment identifies the second victim as "Fergus Robinson" but at trial and in court opinions, he is referred to by an alias, "Fergus Robertson."

[10]The facts of the case were taken from the opinion of the Louisiana Fifth Circuit Court of Appeal on appeal. St. Rec. Vol. 3 of 8, 5th Cir. Opinion, 00-KA-1300, pp. 1-5, 4/11/01; *State v. Neal*, 793 So.2d 574 (La. App. 5th Cir. 2001) (Table).

Hurst awoke to the sound of Robertson telling someone to leave the house. She looked into the living room and saw a friend, Greg Vickers, lying on the floor. It would later be determined that he died from a single shot which severed his right carotid artery. Hurst saw a man dressed in black standing in the doorway holding a gun with a long barrel. The man pointed the gun towards Robertson, and Robertson and Hurst ran to Duncan's bedroom. Robertson, Hurst and Duncan held the door shut while someone pushed on it from the outside. Soon, five or six shots were fired through the door. One fatal shot struck Robertson in the right thigh and pierced the femoral artery. Another shot wounded Duncan in the arm. These bullets were shot from an AK-47. Shortly after the shots were fired in the house, Hurst heard more gunfire outside of the house. When she felt safe, she called 911.

Meanwhile, Seneca Johnson, who lived next door, and her boyfriend Larry Osborne, had just parked in front of her house. They immediately heard gunfire. Osborne pushed Johnson to the floor of the car. He saw two men wearing ski masks leaving Hurst's home, and one was carrying a rifle. More gunfire erupted and shattered the window of Osborne's car. One bullet entered Johnson's buttocks and moved down her leg. Johnson later learned that the bullet could not be surgically removed because of the dangers associated with the surgery. The bullet was later determined to have been shot from an AK-47.

After the initial gunfire, Darby saw Zannie and Jarrell Neal running to their car. They jumped in the car, and Darby sped away. A police car was behind them and, after a lengthy pursuit during which shots were fired at the police, the three men were apprehended. The police later also found a 9mm casing in the Neals' car and 9mm projectile at the scene of the murders.

On December 17, 1998, the Trial Court severed the charges against each defendant.[11] Thereafter, on October 6, 1999, the indictment was amended to charge Zannie Neal with two counts of second degree murder.[12]

Jarrell Neal was tried before a jury on February 27, 1999, and was found guilty as charged on two counts of first degree murder.[13] On March 1, 1999, the jury also determined that Jarrell Neal should be sentenced to death on both counts.[14]

Zannie Neal, the petitioner herein, was tried before a jury on November 8, through 10, 1999, and was found guilty of two counts of second degree murder.[15] Darby later pleaded guilty on December 1, 1999, to two amended counts of manslaughter.[16]

On December 15, 1999, the Trial Court denied Neal's motions for new trial and for post-verdict judgment of acquittal.[17] Thereafter, on December 16, 1999, the Trial Court sentenced Neal

---

[11]St. Rec. Vol. 5 of 8, Motion for Severance, 11/19/99; Trial Court Order, 12/17/98.

[12]St. Rec. Vol. 1 of 8, Indictment, 5/21/98, amended 10/6/99 as to Zannie Neal; St. Rec. Vol. 6 of 8, Hearing Transcript, 10/6/99.

[13]St. Rec. Vol. 1 of 8, Trial Minutes, 2/27/99 (Jarrell Neal); Verdict, 2/27/99 (Jarrell Neal, Count 1); Verdict, 2/27/99 (Jarrell Neal, Count 2).

[14]St. Rec. Vol. 1 of 8, Trial Minutes, 3/1/99 (Jarrell Neal); Verdict Count 1 Sentencing, 3/1/99 (Jarrell Neal); Verdict Count 2 Sentencing, 3/1/99 (Jarrell Neal).

[15]St. Rec. Vol. 2 of 8, Trial Minutes, 11/8/99 (Zannie Neal); Trial Minutes, 11/9/99 (Zannie Neal); Trial Minutes, 11/9/99 (Zannie Neal); Verdict Count 1, 11/10/99; Verdict Count 2, 11/10/99; St. Rec. Vol. 6 of 8, Trial Transcript, 11/8/99 (pages 57 to 60 missing); Trial Transcript, 11/9/99; St. Rec. Vol. 7 of 8, Trial Transcript (continued), 11/9/99; Trial Transcript, 11/10/99.

[16]St. Rec. Vol. 1 of 8, Indictment, 5/21/98, amended 12/1/99 as to Arthur Darby; St. Rec. Vol. 2 of 8, Defendant's Acknowledgment of Constitutional Rights and Waiver of Rights on Entry of a Plea of Guilty, 12/1/99.

[17]St. Rec. Vol. 2 of 8, Motion for New Trial, 12/15/99; Trial Court Order, 12/15/99; Motion for Post Verdict Judgment of Acquittal, 12/15/99; Trial Court Order 2, 12/15/99; Hearing Transcript, 12/15/99; Minute Entry, dated 12/14/99.

to serve life imprisonment on each count, to run concurrently, and without benefit of parole, probation, or suspension of sentence.[18]

On direct appeal, Neal's retained counsel argued that the evidence was insufficient to prove specific intent to kill or inflict great bodily harm and she requested an errors patent review.[19]  On April 11, 2001, the Louisiana Fifth Circuit Court of Appeal found no merit to the insufficient evidence claim.[20]  The Court also resolved that the Trial Court failed to notify Neal of the post-conviction delays and remanded the matter with directions for the Trial Court to do so.[21]  The Trial Court complied with this directive on April 18, 2001.[22]

Neal's counsel filed a writ application with the Louisiana Supreme Court on May 11, 2001, seeking review of the appellate court's order.[23]  The Court denied the application without reasons on April 12, 2002.[24]

Neal's conviction became final 90 days later on July 11, 2002, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

---

[18]St. Rec. Vol. 2 of 8, Sentencing Minutes, 12/16/99; St. Rec. Vol. 7 of 8, Sentencing Transcript, 12/16/99.

[19]St. Rec. Vol. 7 of 8, Appeal Brief, 00-KA-1300, 9/18/00.

[20]St. Rec. Vol. 3 of 8, 5th Cir. Opinion, 00-KA-1300, p. 7, 4/11/01.

[21]*Id.*

[22]St. Rec. Vol. 2 of 8, Trial Court Notice, 4/18/01.

[23]St. Rec. Vol. 2 of 8, La. S. Ct. Letter, 2001-K-1380, 5/11/01; St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 01-K-1380, 5/11/01.

[24]*State v. Neal*, 812 So.2d 663 (La. 2002); St. Rec. Vol. 2 of 8, La. S. Ct. Order, 2001-K-1380, 4/12/02.

## III.   State Court Procedural Background

Nine months later, on April 8, 2003, Neal submitted *pro se* an application for post-conviction relief with the Trial Court alleging four grounds for relief:[25] (1) the Trial Court erred in using erroneous jury instructions on principal and second degree murder; (2) he was denied the right to testify on his own behalf; (3) racial discrimination existed in the grand jury selection process; and (4) he received ineffective assistance of trial counsel where counsel failed to challenge the grand jury, failed to file a motion to quash the grand jury selection process, failed to object to the jury charge on principals, and failed to subpoena witnesses for the defense.

Thereafter, on April 10, 2003, Neal's newly retained counsel filed a Supplemental Application for Post Conviction Relief raising 11 grounds for relief:[26]

(1)   the cumulative errors at trial entitle Neal to relief from the conviction;
(2)   the grand jury did not consider each and every element of the crime charged and prosecuted;
(3)   racial discrimination existed in the grand jury selection process;
(4)   the Trial Court erred in refusing defense counsel's challenge to petit juror Kelly;
(5)   the State improperly struck petit juror McCay;
(6)   the State failed to timely disclose favorable evidence regarding Darby's presence in the house;
(7)   the Trial Court erred in instructing the jury on reasonable doubt;
(8)   (a) the Trial Court allowed inadmissable evidence from Claudette Hurst and Lieutenant Buras, which had a prejudicial cumulative effect and was hearsay and in violation of the Confrontation Clause;
(b) counsel failed to object to the evidence that Neal dealt drugs for a living;
(c) the State failed to provide notice of intent to use other crimes evidence; and
(d) the recorded 911 calls were hearsay;
(9)   Neal was denied the right to testify on his own behalf;
(10)  he was denied effective assistance of counsel for the following reasons:
(a)   counsel's errors had a prejudicial cumulative effect;

---

[25]St. Rec. Vol. 3 of 8, Uniform Application for Post-Conviction Relief, 4/8/03 (dated 4/3/03).

[26]St. Rec. Vol. 3 of 8, Application for Post Conviction Relief, 4/10/03.

(b) counsel failed to challenge the form of the indictment;

(c) counsel failed to challenge the grand jury;

(d) counsel failed to conduct adequate voir dire where he failed to obtain relevant information from the jurors and failed to assure the State did not violate *Batson*;

(e) counsel failed to ensure biased jurors were excused;

(f) counsel failed to object to inadmissable questions and evidence;

(g) counsel failed to object to or move to suppress gruesome pictures from the crime scene;

(h) counsel failed to secure adequate funds for defense experts;

(i) counsel failed to prepare and present pretrial motions;

(k) counsel failed to litigate discovery issues;

(l) counsel failed to present opening argument;

(m) counsel failed to develop a meaningful defense;

(n) counsel failed to handle right to testify adequately;

(o) counsel presented an inadequate closing argument;

(p) counsel failed to object to improper argument by the State;

(q) counsel improperly handled the jury instructions;

(r) counsel failed to object to expert evidence used by the State;

(s) counsel failed to challenge qualifications of State's experts;

(t) counsel failed to object to inadmissable expert testimony;

(u) counsel failed to challenge the qualification of State's experts; and

(v) counsel failed to impeach the State's witnesses;

(11) Appellate counsel gave ineffective assistance in raising only one issue on appeal.

On October 26, 2005, the Trial Court denied both applications on several grounds.[27]  The Court found Neal's first *pro se* claim (erroneous jury instructions) to be procedurally barred pursuant to La. Code Crim. P. art. 930.4 for failure to raise the claim on appeal.  The Court denied relief on Neal's second and fourth *pro se* claims (right to testify and ineffective assistance) finding each to be without merit.  The Court resolved that the third *pro se* claim (grand jury discrimination) was procedurally barred because there was no prior motion to quash the indictment pursuant to La. Code Crim. P. art 533.

---

[27]St. Rec. Vol. 4 of 8, Trial Court Order, 10/26/05.

As for the eleven claims raised by counsel, the Court found that Claim Nos. 2, 4, 5, 7, and 8 (grand jury error, challenge to juror Kelly, striking of juror McCay, erroneous reasonable doubt charge, inadmissible evidence/counsel error) were procedurally barred from review for failure to timely raise the claims pursuant to La. Code Crim. P. art. 930.4. The Court also procedurally barred counsel's Claim No. 3 (grand jury discrimination) under La. Code Crim. P. art. 533, referencing the reasons addressing the third *pro se* claim. The Court also denied relief as meritless on counsel's Claim Nos. 6, 9, 10, and 11 (failure to disclose evidence, right to testify, ineffective assistance of trial and appellate counsel).

On November 18, 2005, Neal timely submitted *pro se* a writ application with the Louisiana Fifth Circuit raising all of the grounds for relief presented to the Trial Court by him and counsel.[28] He also alleged that the Trial Court erred in relying on a procedural bar under La. Code Crim. P. art. 930.4 without specifying on which subpart of the article it relied. He further argued that the Trial Court erred in denying his request for an evidentiary hearing.

The Louisiana Fifth Circuit denied relief on December 1, 2005, finding no error in the Trial Court's ruling.[29] The Louisiana Supreme Court also denied without reasons Neal's subsequent writ application in which he raised the same claims he and counsel presented to the lower state courts.[30]

---

[28]St. Rec. Vol. 8 of 8, 5th Cir. Writ Application, 05-KH-950, 11/29/05 (dated 11/18/05); *see also*, St. Rec. Vol. 4 of 8, Notice of Intent, 11/22/05; Trial Court Order, 11/22/05 (granting to 12/26/05 to file writ); Notice of Intent, 11/28/05.

[29]St. Rec. Vol. 8 of 8, 5th Cir. Order, 05-KH-950, 12/1/05.

[30]*State ex rel. Neal v. State*, 937 So.2d 382 (La. 2006); St. Rec. Vol. 4 of 8, La. S. Ct. Order, 2006-KH-0639, 9/22/06; St. Rec. Vol. 8 of 8, La. S. Ct. Writ Application, 06-KH-639, 3/22/06 (postmarked 12/22/05); St. Rec. Suppl. Vol. 1 of 4, La. S. Ct. Letter, 2008-KH-1737, 7/31/08.

On January 27, 2006, Neal's counsel also filed a writ application in the Louisiana Fifth Circuit seeking review of the Trial Court's ruling.[31] The application was denied as moot in light of the Court's ruling on the *pro se* writ application.[32]

On June 25, 2008, Neal submitted a writ application, which was filed in the Louisiana Supreme Court on July 31, 2008, seeking reconsideration of his prior *pro se* writ applications to the Louisiana Fifth Circuit under the holding in *Cordero*, 993 So.2d 203.[33] Per the *Cordero* procedures adopted by the Louisiana courts, Pierre's writ application was transferred to the Louisiana Fifth Circuit for reconsideration of the relevant prior orders.[34]

In compliance with the transfer and *Cordero*, on July 9, 2010, the Louisiana Fifth Circuit denied relief to Neal after reviewing all of his prior writ applications and the claims raised therein finding no error in the denial of those writ applications.[35]

On August 4, 2010, Neal sought review of this ruling in the Louisiana Supreme Court.[36] The Court denied the application without stated reasons on September 16, 2011.[37]

---

[31]*See* St. Rec. Suppl. Vol. 1 of 4, 5th Cir. Order, 08-WR-926, p. 7, 10/18/08.

[32]*Id.*

[33]St. Rec. Suppl. Vol. 4 of 4, La. S. Ct. Writ Application, 08-KH-1737, 7/31/08 (postmarked 6/26/08, dated 6/25/08); St. Rec. Vol. 6 of 10, La. S. Ct. Letter, 2008-KH-1924, 8/18/08 (showing postal meter 7/14/08).

[34]*State ex rel. Neal v. State*, 994 So.2d 7 (La. 2008); St. Rec. Suppl. Vol. 4 of 4, La. S. Ct. Order, 2008-KH-1737, 10/10/08. The *Cordero* procedure instructed that writs with questionable review history be transferred to the Louisiana Fifth Circuit for reconsideration.

[35]St. Rec. Suppl. Vol. 1 of 4, 5th Cir. Order, 08-WR-926, p. 7, 10/18/08.

[36]St. Rec. Suppl. Vol. 4 of 4, La. S. Ct. Writ Application, 10-KH-1862, 8/11/10 (dated 8/4/10).

[37]*State ex rel. Neal v. State*, 69 So.3d at 1137; St. Rec. Suppl. Vol. 4 of 4, La. S. Ct. Order, 2010-KH-1862, 9/16/11.

**IV.**     **Federal Petition**

On November 21, 2006, Neal filed a petition for federal habeas corpus relief raising five grounds for relief:[38] (1) the evidence was insufficient to support the verdict; (2) the Trial Court gave erroneous charges on principal and second degree murder; (3) counsel denied him the right to testify on his own behalf; (4) racial discrimination in the selection of the grand jury foreperson; and (5) ineffective assistance of counsel, because counsel failed to challenge the grand jury selection process, failed to file a motion to quash the grand jury selection, failed to object to the charge on principals, and failed to subpoena witnesses for the defense.

The State filed a response in opposition to Neal's petition conceding exhaustion and the timeliness of the complaint.[39]  The State argues, however, that Neal's second and fourth claims are procedurally barred from federal review and the remaining claims are without merit.  Neal filed a reply to the opposition restating his arguments in support of the claims raised and urging that the state court's procedural bar was not adequate to prevent federal review.[40]  Neal has since filed a pleading entitled "Judicial Notice" in which he asks the Court to take judicial notice of several Supreme Court cases of which the Court is already aware.[41]

---

[38]Rec. Doc. 3.

[39]Rec. Doc. 13.

[40]Rec. Doc. 17.

[41]Rec. Doc. 32.

## V.     <u>General Standards of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[42] applies to Neal's petition, which is deemed filed in this court under the federal "mailbox rule" on September 26, 2006.[43]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The record demonstrates that Neal's petition was timely filed in 2006 and that the claims are exhausted.  He maintains the benefit of that original filing date, because of the stay granted by the District Judge.  As argued by the State, however, the record also reflects that two of Neal's claims were dismissed by the state courts on procedural grounds pursuant to La. Code Crim. P. art. 930.4 and La. Code Crim. P. art. 533.  The Court will address these procedural bars before proceeding to the merits of the remaining claims.

---

[42]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[43]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Neal's federal habeas petition on November 21, 2006, when the filing fee was paid.  Neal dated his signature on the petition on September 26, 2006.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his *pro se* petition.  *See Cousin v. Lensing*, 310 F.3d 843, 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

## VI.    Procedural Default

Among his claims, Neal alleges in his second claim that the Trial Court used erroneous jury instructions on the principals and second degree murder, and in his third claim that there was racial discrimination in the selection of the grand jury foreperson.  He raised both of these claims for the first time in his application for post conviction relief.[44]  The Trial Court dismissed the jury instruction claim pursuant to La. Code Crim. P. art. 930.4, because it was not raised on direct appeal. The court also dismissed the grand jury claim for failure to challenge the grand jury by a timely motion to quash as required under La. Code Crim. P. art. 533.  These procedural denials were the last reasoned decisions issued by any state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment.  *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)).  The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review.  *Coleman*, 501 U.S. at 731-32, *Amos*, 61 F.3d at 338.  This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state

---

[44]The grand jury claim was also raised by his counsel in the supplement to the application for post conviction relief.

13

court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The Court must consider whether the bars to review relied upon by the Louisiana courts prohibit consideration of the claims on federal habeas corpus review. For a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

## A.    <u>Independent State Grounds</u>

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural bar. *Amos*, 61 F.3d at 338. In this case, the Trial Court offered the last reasoned decision refusing to address Neal's claims of erroneous jury charge and discriminatory grand jury selection process.

The basis for the dismissal of Neal's erroneous jury instruction claim were the state procedural provisions found in La. Code Crim. P. art. 930.4, which provides for the dismissal of a post conviction application if it: (A) raises claims fully litigated on appeal; (B) raises a claim which should have been raised pretrial or during trial; (C) raises a claim which should have been raised on appeal; (D) the application is a successive application which raises claims which are not new or different; or (E) the application is a successive application which raises new or different claims which should have been raised in a previous application.

This article sets forth the state imposed grounds for dismissal of an application because of its procedural failings under state law, including the Trial Court's reference to Neal's failure to raise the claim on direct appeal or anytime prior to the post-conviction process. The basis for the Trial

Court's dismissal was therefore independent of federal law and relied strictly on state procedural requirements. *Bennett v. Whitley*, 41 F.3d 1581 (5th Cir. 1994) (Art. 930.4); *Washington v. Cain*, No. 98-0584, 2000 WL 863980, at *4 (E.D. La. June 27, 2000) (Art. 930.4); *see also*, *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

The basis for the dismissal of Neal's challenge to the grand jury selection process was found in La. Code Crim. P. art. 533, which required that such a challenge be raised first in a motion to quash.[45] Louisiana's contemporaneous objection rules are independent state grounds on which both Louisiana and federal courts have declined to consider claims of discrimination in the selection of the grand jury and its forepersons. *See Francis v. Henderson*, 425 U.S. 536, 540-41 (1976) (failure to file a pretrial motion to quash as required by Louisiana law stands as a waiver of the right to challenge the grand jury composition which the federal courts must respect); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Williams v. Cain*, 125 F.3d 269, 276 (5th Cir. 1997) (petitioner failed to file pretrial motion to quash regarding his claim of discrimination in the grand jury foreperson selection process and was procedurally barred under Louisiana law and federal review was also barred). The procedural bars imposed by the state courts were clearly independent of federal law.

---

[45]La. Code Crim. P. art. 533 provides the "special grounds for motion to quash grand jury indictment:" A motion to quash an indictment by a grand jury may also be based on one or more of the following grounds:
(1) The manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.
(2) An individual grand juror was not qualified under Article 401.
(3) A person, other than a grand juror, was present while the grand jurors were deliberating or voting, or an unauthorized person was present when the grand jury was examining a witness.
(4) Less than nine grand jurors were present when the indictment was found.
(5) The indictment was not indorsed "a true bill," or the endorsement was not signed by the foreman of the grand jury.

## B. <u>Adequate State Grounds</u>

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*

In doing so, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 4:00CV684-Y, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843, at * 4 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied).

It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03-2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing Art. 930.3 as applied to ineffective assistance of counsel claim). Thus, where such foundation and basis does exist, the bar must stand. However, where such a basis exists in state law, the bar must stand.

### 1.     La. Code Crim. P. art. 930.4 and the Erroneous Jury Charge Claim (Claim No. 2)

In the instant case, Neal alleges that the bar imposed under La. Code Crim. P. art. 930.4 is not adequate to bar his claim of an erroneous jury charge because the Trial Court did not delineate the specific subpart of La. Code Cr. P. 930.4 on which it relied to the post conviction application. In its opinion, however, the Trial Court referenced the State's argument that Neal's claim was barred from review by La. Code Crim. P. art. 930.4(B), quoted above, for failure to object to the charge at trial. The Court also specifically referenced the fact that Neal had pursued a direct appeal, which would bar a claim not raised therein pursuant to La. Code Crim. P. art. 930.4(C).[46]

---

[46]St. Rec. Vol. 4 of 8, Trial Court Order, pp. 1-2, 10/26/05.

According to the Trial Court's ruling, review of Neal's claim of erroneous jury charge was barred pursuant to La. Code Crim. P. art. 930.4(B) and (C) for his failure to object to the charge at trial and for his failure to raise the claim on direct appeal. The provisions of both Art. 930.4(B) and (C) are adequate to bar federal review of Neal's claim that the Trial Court used an erroneous jury instruction on principals.

The Court notes that Neal also suggests that the Trial Court may have misapplied Art. 930.4 because it failed to indicate a particular subsection. This Court does not sit to correct an error that may have been made in referencing the subsection of the article, and application of Art. 930.4 in this case was not fundamentally unfair. *See Narvaiz*, 134 F.3d at 695; *Neyland*, 785 F.2d at 1293. The rule was actually applicable to the particular facts of Neal's case and therefore was adequate to bar his claims. *See Martin*, 98 F.3d at 847.

## 2. La. Code Crim. P. art. 533 and the Grand Jury Selection Process Claim (Claim No. 4)

The Trial Court barred Neal's claim challenging the grand jury selection process and its impact on his indictment for failure to present the claim in a prior motion to quash. Neal's challenge was based on the opinion in *Campbell v. Louisiana*, 523 U.S. 392 (1998), and related case law, which recognized a right of action to all defendants, regardless of race, for racial discrimination in the selection and composition of grand juries in Louisiana.[47]

---

[47]In *Campbell*, the Supreme Court first recognized that a white defendant has third-party standing to assert an equal protection challenge, as well as a due process challenge, based upon discrimination against blacks in the grand jury selection process used in all Louisiana parishes except Orleans under La. Code Crim. P. Art. 413(B). The *Campbell* court found that, although Campbell specifically challenged the discriminatory selection of the grand jury foreperson under the Louisiana system, the court treated Campbell's claim as a challenge to the discriminatory selection of grand jurors. *Campbell*, 523 U.S. at 397. The Louisiana statute, La. Code Crim. P. Art. 413(B), was amended to prevent any potential for discrimination in light of *Campbell*. See La. Code Crim. P. Art. 413(B) (West Supp. 1999), amended by Acts 1999, No. 984 §1.

Traditionally, Louisiana's contemporaneous objection rules have been considered adequate grounds on which Louisiana courts, and federal courts, rejected claims of invalid indictments based on potential discrimination in the selection of the grand jury and forepersons under Louisiana law even prior to *Campbell*. *See Francis*, 425 U.S. at 540-41 (failure to file a pretrial motion to quash as required by Louisiana law stands as a waiver of the right to challenge the grand jury composition which the federal courts must respect) (citing *Michel v. Louisiana*, 350 U.S. 91, 97-98 (1955)); *Williams v. Cain*, 125 F.3d at 276 (petitioner failed to file pretrial motion to quash regarding his claim of discrimination in the grand jury foreperson selection process and was procedurally barred under Louisiana law and federal review was also barred).

Since the issuance of *Campbell*, the Louisiana courts have also consistently and evenhandedly applied this procedural bar in similar cases, refusing to review the merits where no contemporaneous pretrial motion to quash or objection was made. *Deloch v. Whitley*, 684 So.2d 349, 650 (La. 1996) (holding equal protection claim based upon discriminatory selection of grand jury foreman procedurally barred by defendant's failure to file a pretrial motion to quash); *State v. Woodberry*, 820 So.2d 638 (La. App. 4th Cir. 2002); *State v. Richthofer*, 803 So.2d 171 (La. App. 5th Cir. 2001); *State v. Robinson*, 754 So.2d 311, 322 (La. App. 2nd Cir. 2000); *State ex rel Roper v. Cain*, 763 So.2d 1, 4-5 (La. App. 1st Cir. 1999), *writ denied*, 773 So.2d 733 (La. Nov. 17, 2000); *State v. Straughter*, 727 So.2d 1283 (La. App. 4th Cir.), *writ denied*, 747 So.2d 14 (La. 1999). Thus, the Trial Court's reliance upon La. Code Crim. P. art. 533 to bar review of Neal's claim on post-conviction review was adequate to bar review in this Court on habeas corpus review.

Neal will be excepted from the procedural bars to federal review of his claims only if he can show cause for his defaults and prejudice attributed thereto. Alternatively, he could demonstrate that

the federal court's failure to review the claims will result in a fundamental miscarriage of justice. *Nobles*, 127 F.3d at 414 (citing *Coleman*, 501 U.S. at 731-32); *Amos*, 61 F.3d at 338-39 (citing *Harris*, 489 U.S. at 262 and *Engle v. Isaac*, 456 U.S. 107, 129 (1982)). These exceptions to the imposition of a bar will be addressed below.

### C.    Cause and Prejudice

To establish a cause for his procedural default, Neal must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id*. at 486.

Neal has not demonstrated the existence of any objective factor <u>external</u> to the defense that impeded his or counsel's ability to raise the claims prior to trial or on direct appeal. The record also does not reflect any action or inaction on the part of the State which prevented him from doing. He also has not demonstrated that his counsel was ineffective for failure to challenge the grand jury selection process, as discussed later in this opinion.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43). Thus, because petitioner has failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and the petitioner has not alleged any actual prejudice. *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

Neal's claims are therefore procedurally barred from review by this federal habeas corpus court. *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded when petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[48]

### D.    Fundamental Miscarriage of Justice

A petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice. *Hogue*, 131 F.3d at 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). To establish this, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902. "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

Neal has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence. *Murray*, 477 U.S. at 496. Furthermore, the arguments now raised in support of this federal habeas corpus petition were before the state courts and offer no basis for reasonable doubt on habeas corpus review. When the

---

[48]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not <u>required</u> to raise the procedural default argument *sua sponte*. *Id*.

petitioner has not factually established his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Neal has not met this alternative exception to the procedural bar, his claims of an erroneous jury charge and discriminatory grand jury selection process must be dismissed with prejudice without review of the merits. The Court will proceed to review of the remaining claims.

**VII.**     <u>**Standards of Review on the Merits**</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See, e.g., id.* at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir. 2000), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641

(quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011).

## VIII.   Insufficient Evidence (Claim No. 1)

Neal alleges that there was insufficient evidence to support a conviction for second degree murder. He claims that the evidence did not establish an intent to kill or that he was engaged in an aggravated burglary at the time of the killings. The State argues that the state courts' reasonably relied on federal law to deny relief on this claim.

Neal's counsel first raised this claim on direct appeal to the Louisiana Fifth Circuit, arguing that the evidence was insufficient to connect him to the murder, because the jury should not have believed Darby's testimony. The Court denied relief and resolved that the evidence was sufficient under the standards in *Jackson v. Virginia*, 433 U.S. 307 (1977), and related state case law.

In its reasoned decision, the Louisiana Fifth Circuit held that Neal's actions prior to the shootings established his intent to participate in collection of the money owed to his brother, and he armed himself with a handgun to accomplish the collection. This along with the physical evidence established the requisite intent to support the convictions. The Court also concluded that it was solely within the province of the jury to find Darby's testimony to be credible. This was the last reasoned decision on the issue since the Louisiana Supreme Court denied the subsequent writ application without reasons. *See Ylst*, 501 U.S. at 802.

Claims of insufficient evidence present a mixed question of law and fact. *Perez v. Cain*, 529 F.3d 588, 594 (5th Cir. 2008). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley v.*

*Collins*, 968 F.2d 465, 467 (5th Cir. 1992) (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

The appropriate standard for determining the sufficiency of evidence is that set forth in *Jackson v. Virginia*, which was relied upon by the state appellate court. Under *Jackson*, 443 U.S. at 307, a court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found the essential elements of the crime to have been proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Perez*, 529 F.3d at 594; *Williams v. Cain*, 408 Fed. Appx. 817, 821 (5th Cir. 2011). To determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. *Perez*, 529 F.3d at 594 (citing *Jackson*, 443 U.S. at 324 n.16); *Weeks v. Scott*, 55 F.3d 1059, 1062 (5th Cir. 1995).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. *See McDaniel v. Brown*, __U.S. __, 130 S. Ct. 665, 672, 673 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under *Jackson*); *Johnson v. Cain*, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (*Jackson* standard relies "upon the record evidence adduced at trial.") (quoting *Jackson*, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses; those determinations are the exclusive province of the jury. *United States v. Young*, 107 Fed. Appx. 442, 443 (5th Cir. 2004) (citing *United States v. Garcia*, 995 F.2d 556, 561 (5th Cir. 1993); *see also Jackson*, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."). Thus, all credibility choices and conflicting inferences are to be resolved in favor of the

verdict. *Ramirez v. Dretke*, 398 F.3d 691, 695 (5th Cir. 2005). A reviewing habeas court is not authorized to substitute its interpretation of the evidence or the credibility of witnesses for that of the fact-finder. *Weeks*, 55 F.3d at 1062.

Neal was charged with and convicted of two counts of second degree murder. The offense of second degree murder, relevant to this case, is defined by Louisiana law as "the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; or (2) When the offender is engaged in the perpetration or attempted perpetration of . . . aggravated burglary . . . even though he has no intent to kill or to inflict great bodily harm." La. Rev. Stat. Ann. § 14:30.1.

Louisiana law defines a "principal" as a person "concerned in the commission of a crime, whether present or absent and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime." La. Rev. Stat. Ann. § 14:24. Not all principals are automatically guilty of the same grade of the offense. However, a principal may be charged with and convicted of a higher or lower degree of the crime, depending on the mental element proved at trial. *State v. Tate*, 851 So.2d 921, 930 (La. 2003) (citing *State v. Brooks*, 505 So.2d 714, 717 (La. 1987)). It is not enough that his accomplice had the intent; the State must prove that the defendant had the required mental element, in this case specific intent. *Id*.

The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. *State v. Sharlhorne*, 554

So.2d 1317, 1321 (La. App. 1st Cir. 1989); *State v. Tate*, 851 So.2d at 930 (citing *State v. Brooks*, 505 So.2d at 717). To establish specific intent, the State must show that the defendant pulled the trigger, that he acted in concert with his co-perpetrator, or that he actively acquiesced in the use of deadly force. *State v. Tate*, 851 So.2d at 930. As a general principle of law, all of these elements may be proven by the uncorroborated testimony of a purported accomplice. *Id.*, at 928 (citing *State v. May*, 339 So.2d 764, 774 (La. 1976); *State v. Howard*, 751 So.2d 783, 801 (La. 1999)).

In this case, Darby was a co-defendant and a witness for the prosecution. He testified to Zannie Neal's knowledge of and role in the crime. Darby testified that his nephews, Jarrell and Zannie Neal, came to his house on the night in question.[49] Zannie asked him to come with them to collect money owed to them from a drug deal that went bad.[50] At their request, he brought his .38 caliber pistol with him.[51] Darby stated that Jarrell was wearing a knit hat and Zannie was wearing a cap when they exited the car at the scene of the crime.[52] He testified that Jarrell had a rifle and Zannie had a black hand gun when they returned.[53] Darby also testified that, when Jarrell and Zannie returned to the car, they said that "the dude was down bad."[54] Zannie also said his gun had jammed, so he hit "him" on the head and the gun went off.[55] Darby also testified about the car

---

[49]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 34-35, 11/10/99.

[50]*Id.*, pp. 45-47.

[51]*Id.*, p. 36.

[52]*Id.*, p. 46.

[53]*Id.*, pp. 37, 39.

[54]*Id.*, pp. 39-40.

[55]*Id.*, p. 40.

chase, Jarrell's shooting from the window and fall from the car, and his own exit from the vehicle before being found by police dogs.[56]

The jury also heard the testimony of Seneca Johnson. Johnson testified that she was shot in the buttocks while slumped down on the seat of her boyfriend's car.[57] She stated that they heard gunshots, and two men ran past the car.[58] According to her boyfriend, Larry Osborne, the men were wearing ski masks.[59] She also testified that she was told that the bullet, which still remained in her leg, came from a sawed off rifle along the lines of an AK-47.[60]

Claudette Hurst, Keinna Porter, and Carl Duncan also testified about the incidents inside the house and being shot at through the bedroom door.[61] Hurst only saw the barrel of the gun and a man dressed in black before she ran into her brother Carl's bedroom.[62] She also testified that Fergus Robertson had answered a call at her home from the Neal brothers who were looking for money from her step-father, Franklin McQueen, who previously had been living with her.

The jury also heard the testimony of Deputy Derrick McGee, the off-duty sheriff's deputy, who saw the Neals' car leaving the scene of the shootings and who began the pursuit which eventually led to their arrests. Deputy McGee testified about the trail of the pursuit and the fact that

---

[56]*Id.*, pp. 40-42.

[57]St. Rec. Vol. 6 of 8, Trial Transcript, p. 25, 11/9/99.

[58]*Id.*

[59]*Id.*, p. 31.

[60]*Id.*, p. 28.

[61]*Id.*, at pp. 73-74, 106-07, 120-21.

[62]*Id.*

the officers in pursuit were shot at from the car.[63]  Deputy Harold Bourgeois's car was struck by at least two bullets that pierced his radiator.[64]  Deputy McGee, Deputy Harold Bourgeois, and Deputy Edwin Klein, also testified that, at one point, a man jumped or fell out of the car and the deputies pursued him.[65]  Deputy Bourgeois caught and arrested Jarrell Neal and retrieved his rifle.[66]

Deputy McGee and Deputy Klein also testified that the pursuit ended when the Neals' car crashed into a parked tow truck.[67]  Deputy Klein testified that, just prior to the crash, the driver exited the car as it was still moving.[68]  He chased the driver down an alley while his partner, Deputy Lehrmann approached the car to secure the remaining passenger.[69]  Klein returned to the car to assist Deputy Lehrmann in the arrest of Zannie Neal.[70]  Klein and other officers with dogs eventually located the driver, Arthur Darby, and arrested him.[71]

A .38 caliber pistol was retrieved from the vehicle and later determined to belong to Darby.[72] The investigation revealed that Zannie Neal was in possession of a 9mm pistol matching the casing

---

[63]*Id.*, pp. 142-148, 170-71.

[64]*Id.*, pp. 175, 170-71.

[65]*Id.*, pp. 148-154, 172-174.

[66]*Id.*

[67]*Id.*, pp. 148, 182.

[68]*Id.*, p. 182.

[69]*Id.*, p. 183, 192.

[70]*Id.*, p. 183, 193.

[71]*Id.*, p. 184.

[72]*Id.*, p. 234.

found at the scene of the murders.[73]  The tests also revealed that both Jarrell and Zannie Neal had extensive amounts of gun powder residue on their hands at the time of their arrests.[74]

Zannie Neal suggests that the jury should not have believed the self-serving testimony of his co-defendant Darby.  As noted above, Louisiana law allows specific intent to be established by the uncorroborated testimony of an accomplice like Darby.  *State v. Tate*, 851 So.2d at 928.  As is shown from the other testimony and evidence, Darby's testimony was far from uncorroborated.

In addition, the determination of the credibility of a witness is within the province of the jury. *Passman v. Blackburn*, 652 F.2d 559, 569 (5th Cir. 1981) (that the jury chose to believe a witness whose credibility was challenged is not a question of constitutional dimensions).  The habeas court should defer to the jury's resolution of credibility determinations and justifiable inferences of fact. *Holderfield v. Jones*, 903 F. Supp. 1011, 1018 (E.D. La. 1995) (citing *U.S. v. Hatch*, 926 F.2d 387, 399 (5th Cir. 1991)).  Based on the foregoing review, the record is replete with other testimony and evidence that serves to corroborate Darby's testimony and support the jury's decision to find that testimony credible.  Neal has failed to demonstrate a basis to challenge the jury's resolve.

Furthermore, the testimony at trial demonstrated that Zannie Neal was a willing and knowing participant in the forced entry into Claudette Hurst's home to recover money.  The jury heard evidence of a forced entry and of a confrontation between Fergus Robertson and the intruders.  The evidence indicated that Zannie Neal was armed with a hand gun that was used to strike one of the victims and was discharged during the event.  Considered in the light most favorable to the prosecution, the record contains more than enough direct and circumstantial evidence to demonstrate

---

[73]*Id.*, p. 235.

[74]*Id.*, p. 239.

that Neal either had specific intent to kill or commit great bodily harm or was willingly involved in an aggravated burglary, which required no intent to kill, in support of the jury's second degree murder verdicts.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of federal law. Neal is not entitled to relief on this claim.

## IX. Ineffective Assistance of Counsel (Claim No. 3 and 5)

Neal alleges that his counsel gave ineffective assistance in denying him the right to testify and in his failure to challenge the grand jury selection process by motion to quash, the court's charge on principals, and in failing to call defense witnesses. Neal raised these claims in his application for post-conviction. The last reasoned decision on the issue was that of the Louisiana Fifth Circuit which found the claims to be without merit, as was also found by the state trial court. Neal's subsequent writ application to the Louisiana Supreme Court was denied without reasons. *See Ylst*, 501 U.S. at 802. These rulings did not change and were re-confirmed when relief was denied on *Cordero* review.[75]

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Richards v. Quarterman*, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

The appropriate standard for judging the performance of counsel was established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which

---

[75]*State ex rel. Neal v. State*, 69 So.3d 1137 (La. 2011); St. Rec. Suppl. Vol. 4 of 4, La. S. Ct. Order, 2010-KH-1862, 9/16/11; St. Rec. Suppl. Vol. 1 of 4, 5th Cir. Order, 08-WR-926, 10/18/08.

the petitioner must prove deficient performance and prejudice therefrom.  *See Strickland*, 466 U.S. at 697.  The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001), *cert. denied*, 534 U.S. 1163 (2002).  "The defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88; *Cantu v. Thaler*, 632 F.3d 157, 163 (5th Cir. 2011).  The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances.  *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).  The reviewing court must "'judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011) (citing *Strickland*, 466 U.S. at 689).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010).  Furthermore,

"[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Cullen*, 131 S. Ct. at 1403 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 131 S. Ct. at 791.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)), *cert. denied*, 531 U.S. 849 (2000).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 131 S.Ct. at 788. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Harrington*, 131 S. Ct. at 788 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." *Cullen*, 131 S. Ct. at 1403 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689 and quoting *Knowles*, 556 U.S. at 121 n.2).

## A.    <u>Denied the Right to Testify</u>

Neal alleges that his trial counsel denied him the right to testify on his own behalf which violated his Fourth, Fifth and Fourteenth Amendment rights.

It is well settled that a criminal defendant has the right to testify on his own behalf pursuant to the Fifth, Sixth and Fourteenth Amendments. *Rock v. Arkansas*, 483 U.S. 44 (1987); *Bower v. Quarterman*, 497 F.3d 459, 473 (5th Cir. 2007); *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001); *Jordan v. Hargett*, 34 F.3d 310, 312 (5th Cir. 1994). A defendant can only waive his right to testify if that waiver is knowing, intelligent and voluntary. *Bower*, 497 F.3d at 473 (*Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997)). A violation of this right occurs only if the "'final decision that [the defendant] would not testify was made against his will.'" *Emery*, 139 F.3d at 198 (quoting *United States v. Teague*, 908 F.2d 752, 759 (11th Cir. 1990), *reh'g granted*, 953 F.2d 1525 (11th Cir.), *cert. denied*, 506 U.S. 842 (1992)).

A habeas petitioner has the burden of proving that he was denied this constitutional right. It is not enough for a habeas petitioner to merely state that he told his trial attorney that he wanted to testify and that his attorney forbade him doing so. *Turcios v. Dretke*, No. H-97-0515, 2005 WL 3263918, at *6 (S.D. Tex. 2005) (citing *Underwood v. Clark*, 939 F.2d 473, 475-76 (7th Cir. 1991)); *see also*, *Davis v. Prince*, No. 11-0712, 2011 WL 5878155, at *16 (E.D. La. Sept. 28, 2011)

(Wilkinson, M.J.), *report and recommendation adopted*, No. 11-0712, 2011 WL 5878152, at *1 (E.D. La. Nov. 23, 2011) (Feldman, J.); *Jones v. Cain*, No. 10-213, 2010 WL 5375949, at *3 (E.D. La. Dec. 17, 2010) (Vance, J.); *Davis v. Quarterman*, No. H-06-3606, 2007 WL 1886272, at *6 (S.D. Tex. June 29, 2007). The United States Seventh Circuit Court of Appeals in *Underwood* specifically noted the potential problems likely to arise if habeas petitioners, making similar arguments, are not required to satisfy the required burden of proof. *Underwood*, 939 F.2d at 475-76. Adopting the reasoning in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir. 1987), the *Underwood* Court recognized that such an assertion, even if made under oath was inadequate to meet that burden:

> . . . this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary - and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify - to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Id.*, 939 F.2d at 475-76 (citations omitted).

Citing *Underwood*, the United States Fifth Circuit Court of Appeals has also indicated the same concerns:

> Courts have observed that allowing a bare assertion of a right-to-testify violation to precipitate the further investment of judicial resources is problematic. See [*Underwood*, 939 F.2d at 476] . . . (stating that a conclusory assertion by a defendant that his right to testify was denied him is insufficient to require a hearing because "[I]t just is too facile a tactic to be allowed to succeed"). We agree that there is "a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process unworkable."

*United States v. Martinez*, 181 F.3d 627, 628 (5th Cir. 1999) (quoting *Underwood*, 939 F.2d at 475).

Neal has not presented anything but his unsupported claim that his counsel did not allow him to testify. The record also contains nothing to support his claim. This court's review is bound by

the record that was before the state courts when the claim was addressed and that record contains nothing (nor does this federal record) that would support Neal's claims that counsel did not allow him to testify.

Nevertheless, even assuming that Neal's counsel advised him not to testify, he has not established a violation of *Strickland*. The Fifth Circuit has held that counsel's decision not to place a defendant on the stand is a strategy which seldom will support a challenge of ineffective assistance of counsel. *See Jones v. Cain*, 227 F.3d 228, 231 (5th Cir. 2000) (citing *Robison v. Johnson*, 151 F.3d 256 (5th Cir. 1998), *cert. denied*, 526 U.S. 1100 (1999)). Federal courts have consistently recognized that such tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999), *cert. denied*, 528 U.S. 1013 (1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983-84 (5th Cir. 1994)).

In this case, Neal indicates that his counsel advised him that he should not testify because of his past criminal record which would be disclosed to the jury.[76] This advice was reasonable under the circumstances considering the evidence already in the record and the State's efforts to link the murders to the Neals' prior drug activity. Had Neal taken the stand, the State undoubtedly would have cross-examined him about his criminal past and the nature of his prior convictions.

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Moore v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999). Neal has not met this burden. The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court precedent. Neal is not entitled to relief on this claim.

---

[76]Rec. Doc. 3, Memorandum in Support, p. 20, ¶ 4.

### B.    Failed to Challenge Grand Jury Selection Process or File Motion to Quash

Neal contends that his counsel was ineffective for failing to challenge or file a motion to quash the unconstitutional grand jury selection process. The record indicates, however, that at the time of Neal's prosecution, counsel's failure to file a motion to quash the indictment was reasonable and not unconstitutionally deficient.

Under Louisiana law, a motion to quash an indictment may be filed if, among other things, "the manner of selection of . . . the grand jury venire, or the grand jury was illegal." La. Code Crim. P. art. 533. However, federal courts have long recognized that the filing of a motion to quash of this type is generally a matter of professional judgment left to the discretion of counsel. *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965) (citing *Michel v. Louisiana*, 350 U.S. at 91); *accord United States v. Lewis*, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986). In *Michel*, the United States Supreme Court held that the failure of counsel to move to quash the indictment on grounds that the grand jury was unconstitutionally impaneled because of the historical exclusion of minorities from the grand jury, including such exclusions in the consolidated cases before the Court, was not deficient performance *per se* and was within the range of sound trial strategy, given the facts of the case. *Michel*, 350 U.S. at 100.

In the instant case, the decision of Neal's counsel not to raise the systematic discrimination against African-Americans in the grand jury selection process was not outside the reasonable discretion afforded counsel. Neal has made no showing on this issue nor to any other court of an intentional race or gender discrimination in the selection of his grand jury or its foreperson. He therefore has not shown that any such motion to quash would have been successful. Counsel does not perform deficiently in failing to file a meritless motion. *See Smith v. Puckett*, 907 F.2d 581, 585

n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also*, *Koch v. Puckett*, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections."). Neal has therefore failed to establish that counsel's performance was constitutionally deficient in this regard.

Even if deficient performance could somehow be found, Neal cannot demonstrate prejudice arising from counsel's actions. *See Pickney v. Cain*, 337 F.3d 542, 545 (5th Cir. 2003) (addressing prejudice in terms of ineffective assistance of counsel to avoid a procedural default). As discussed above, Neal has made no showing to this, or any other court, of an intentional race or gender discrimination in the selection of his specific grand jury or its foreperson. Without such a showing, he has not stated a constitutional violation from which he could have suffered any prejudice. *Guillory v. Cain*, 303 F.3d 647, 653 (5th Cir. 2002).

Furthermore, in light of the strong evidence against Neal, even if counsel had filed a successful motion to quash the indictment, the State would have undoubtedly sought and obtained a second indictment, and there is no showing that the trial result would have been any different. *Brown v. Cain*, 337 F.3d 546, 550 n. 5 (5th Cir. 2003), *cert. denied*, 540 U.S. 117 (2004); *Pickney*, 337 F.3d at 545 ("[W]e have no doubt that, if [petitioner] had been successful in having his indictment quashed, the State of Louisiana would have sought and obtained a second indictment").

Neal has not shown deficient performance by counsel or any prejudice resulting from a failure to file a motion to quash or object to the state trial court's jurisdiction from the indictment. For these reasons, the state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Strickland. He is not entitled to relief on this claim.

### C.    Failed to Object to Jury Charge on Principals

Neal alleges that his counsel failed to object when the Trial Court erroneously conveyed the instruction on principals in a manner which relieved the State of their burden of proof.  Neal references the Louisiana statutory definition of principal in his argument, but he has not pointed to the language he finds objectionable.[77]  Under a broad reading, he appears to allege that the fact that counsel allowed the Trial Court, without objection, to charge the jury on the law of principals permitted the jury to find him guilty as a principal without the state having to prove his actual guilt or specific intent.  This, he argues, violated his rights to a fair trial and due process.

Neal challenged the principal jury charge and, as outlined above, the state courts rejected the claim as procedurally barred.  Nevertheless, in order to determine whether counsel should have objected, the Court must consider the propriety of the charge.

In order to determine whether the language of a jury charge amounts to a constitutional error, the Court must determine whether the instructions, when read as a whole, relieved the State of its burden to prove each element of the crime beyond a reasonable doubt in violation of the principles set forth in *In re Winship*, 397 U.S. 358 (1970).  *See Francis v. Franklin*, 471 U.S. 307 (1985).  In doing so, the Court must consider whether the specific language involved creates a constitutionally objectionable "mandatory presumption," or "merely a permissive inference," on an essential element of the crime.  *Franklin*, 471 U.S. at 314.

The mere use of an erroneous instruction to the jury is not a basis for federal habeas relief. *Estelle*, 502 U.S. at 62.  Instead, the Court must focus on "whether the ailing instruction by itself so infected the entire trial process that the resulting conviction violates due process."  *Id*., at 72

---

[77]Rec. Doc. 3, Memorandum in Support, pp. 37, 9.

(citations omitted).  In examining the challenged instruction, the Court does not look at it in "artificial isolation", but must consider it in the "context of the instructions as a whole and the trial record."  *Id.*  Finally, when there is a question as to whether a jury instruction is ambiguous and violates due process by relieving the State of the burden of proof of an element of a crime, the question before the Court is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."  *Id.* (citations omitted); *accord Flowers v. Blackburn*, 779 F.2d 1115 (5th Cir. 1986).

If the charge amounts to error, the Supreme Court has held that the error is subject to a harmless error analysis finding jury charge challenges to be trial error and not structural error.  *California v. Roy*, 519 U.S. 2, 5-6 (1996) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)).  The applicable test is whether the instruction "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619 (1993); *Roy*, 519 U.S. at 6; *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Upon application, when a federal judge in a habeas proceeding is in grave doubt about whether trial error of federal constitutional law had substantial and injurious effect or influence in determining jury's verdict, that error is not harmless, and petitioner must be granted relief.  *O'Neal*, 513 U.S. at 436.  Therefore, this Court on habeas review is required to determine whether the principal charge given in Neal's case amounted to constitutional error.  Only if it did would the Court need to consider whether the error was harmless.

At the close of Neal's trial, the Trial Court instructed the jury that they "must not single out any one of these instructions and disregard the others."[78] With this directive, the jury was charged that "the burden is on the State to prove the defendant's guilt beyond a reasonable doubt . . ."[79] The Trial Court also advised the jury of the reasonable doubt standard prior to voir dire.[80]

The Trial Court instructed the jury before deliberations that second degree murder occurred when the defendant had a specific intent to kill or inflict great bodily harm or was engaged in an aggravated burglary even though he had no specific intent to kill or to inflict great bodily harm.[81] After defining the other lesser included offenses, the Trial Court instructed the jury about the definition of principal:[82]

> All persons concerned in the commission of a crime, are principals and are guilty of the crime charged if, whether present or absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime. Further, each person consenting to the commission of an offense and doing any one act which is an ingredient in the crime, or immediately connected with or leading to its commission, is a principal.
>
> Mere presence at the scene of a crime does not, however, make one a principal. There must be proof that he actually committed the crime, or that he had agreed to commit it, or was present with a design to encourage, incite, or in some manner to aid, abet, or assist in its actual preparation.

---

[78]St. Rec. Vol. 2 of 8, Jury Instructions, p. 2.

[79]*Id.*

[80]St. Rec. Vol. 6 of 8, Trial Transcript, p. 11, 11/8/99.

[81]St. Rec. Vol. 2 of 8, Jury Instructions, p. 5.

[82]*Id.*, p. 8.

The Court also defined specific criminal intent as part of the above definition of second degree murder.[83]   In summary, the Court reiterated the elements needed to prove that Neal was guilty:[84]

> Thus, in order to convict the defendant of second degree murder, you must find:
> 1.       that there was a killing of Greg Vickers and/or Fergus Robinson; AND
> 2.       that the defendant acted with a specific intent to kill or commit great bodily harm; OR
> 3.       that the killing occurred while the defendant was engaged in the perpetration or attempted perpetration of Aggravated Burglary, even though the defendant had no specific intent to kill or inflict great bodily harm.

The principal charge quoted above did not direct the jury to infer or impute guilt to the petitioner.  The charge instead instructed the jury to consider a person to be a principal **only if** he actually committed the crime (which requires proof of intent and other elements) or caused another to commit the crime (which requires proof of intent and other elements).  This charge did  not contain the burden-shifting language previously found objectionable and unconstitutional by the federal courts.  *See Flowers*, 779 F.2d at 1121-22.

Furthermore, in this case, the State charged Neal in the amended indictment with the commission of two counts of second degree murder.  As discussed in the Court's analysis of the sufficiency of the evidence, the record was replete with evidence to support either a finding of specific intent to kill or cause great bodily harm or that the murders occurred during an aggravated burglary in which Neal was a principal participant.  Upon proof of these facts, under either scenario, the jury was entitled to consider Neal guilty as a principal.  The record also shows that the burden

---

[83]*Id.*, p. 5.

[84]*Id.*

remained on the State to prove the commission of the crime, which included proof of commission of or participation in the murders and/or the aggravated burglary.

Neal has failed to demonstrate that the charge on the law of principals created an impermissible presumption of guilt or relieved the State of its burden of proof. Having reached this conclusion, the Court cannot find that counsel was ineffective in his assistance when he did not object to the principal charge. Neal's counsel was not required to lodge an objection that had no legal basis. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). Even if the charge had been questionable, there is no showing of a reasonable likelihood that the error "had a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637-38. Counsel's failure to object was not the cause of prejudice nor did it have a prejudicial impact on the verdict.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, *Strickland*. Neal is not entitled to relief on this claim.

### D.  Failed to Subpoena Defense Witnesses

Neal alleges that his counsel failed to subpoena Jarrell Neal as a witness who would have testified that Zannie Neal stayed in the car and that Zannie Neal had no knowledge that he and Darby were looking for Franklin McQueen. He claims this would have raised doubt as to his intent and his involvement as a principal. He also claims that counsel should have interviewed and called Claudette Hurst as a witness who would have testified that the victim, Fergus Robertson, had a 9mm weapon that disappeared before trial.

 As an initial matter, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a

witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). In this case, Neal asserts that his brother and Hurst would have testified in a manner to clear him as a principal in these crimes. "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of *Strickland* if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" *Williams v. Cockrell*, 31 Fed. Appx. 832 (5th Cir. 2002) (*quoting Williams v. Cain*, 125 F.3d at 278).

Neal has not submitted any evidence or affidavits to establish the substance of the expected testimony of either witness. He cannot do so now in this federal court for the first time. *See Cullen*, 131 S. Ct. at 1401 ("At a minimum, therefore, § 2254(e)(2) still restricts the discretion of federal habeas courts to consider new evidence when deciding claims that were not adjudicated on the merits in state court.") (citing *Williams v. Taylor*, 529 U.S. at 427-429). He has presented nothing, but his own self-serving allegation that his brother, who was convicted of first degree murder, would have testified in his favor and that Hurst had information about another 9mm pistol.

In addition, the record reflects that Claudette Hurst was in fact called as a witness for the State. Neal's counsel cross-examined her at length about the events on the night of the murder. No error is shown by his failure to call her as a defense witness when he already had the opportunity to question her at trial.

Further, Neal suggests in his petition that he wanted to testify about his friendship with Claudette Hurst. However, during her testimony, Hurst denied that she was friends with him or his

brother and that she only knew of them through her step-father.[85]  Neal's assertion that Hurst would have had additional favorable testimony is rendered questionable in light of her actual trial testimony.

Nevertheless, Neal has failed to establish that either his brother or Hurst would have testified in the manner he alleges or that counsel was deficient in failing to pursue such testimony.  As noted above, hindsight is not the standard by which counsel's actions are judged.  *Strickland*, 466 U.S. at 689.  Neal has failed to demonstrate any deficiency in counsel's decision regarding witnesses for the defense or his preparation to question the witnesses brought by the State.

The state court's denial of relief on this claim was therefore not contrary to, or an unreasonable application of *Strickland*.  Neal is not entitled to relief on this claim.

## X.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Zannie Neal's petition for issuance of a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[85]St. Rec. Vol. 6 of 8, Trial Transcript, pp. 84-85, 86, 97-98, 11/9/99.

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[86]

New Orleans, Louisiana, this 13th day of February, 2012.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[86]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.